01

02

03

04          UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
05                AT SEATTLE

06  PERCY LEVY,                    )    CASE NO. C06-1224-JLR-MAT
                                   )
07        Petitioner,              )
                                   )
08  v.                             )    REPORT AND RECOMMENDATION
                                   )
09  JEFFREY UTTECHT,               )
                                   )
10        Respondent.              )
   _____ )

11

12              INTRODUCTION AND SUMMARY CONCLUSION

13          Petitioner Percy Levy is a state prisoner who is currently incarcerated at the Washington

14  State Penitentiary in Walla Walla, Washington.  He seeks relief under 28 U.S.C. § 2254 from his

15  2003 Snohomish County Superior Court convictions.  Respondent has filed an answer to the

16  petition together with relevant portions of the state court record.  Petitioner has filed a traverse

17  to respondent's answer.  The briefing is now complete and this matter is ripe for review.

18  Following careful consideration of the record, this Court concludes that petitioner's § 2254

19  petition should be denied and that petitioner's petition, and this action, should be dismissed with

20  prejudice.

21              FACTUAL AND PROCEDURAL HISTORY

22          The Washington Court of Appeals, on direct appeal of petitioner's conviction, summarized

REPORT AND RECOMMENDATION
PAGE -1

the facts of petitioner's crime as follows:

On October 24, 2002, a home invasion robbery took place in an apartment described as a "drug house." Present in the apartment were its renter, Kenya White, as well as Jerry Mitchell, Mike Montemayor, and Brianna Thorne. Levy arrived at the apartment in a Chevy Suburban driven by John Cox. The two men were accompanied by Denice Bowers and Breena Martin.

Martin entered the apartment first. Bowers joined her in the apartment after a few minutes. According to Bowers, when she went into the apartment, Martin took her into the bathroom, handed her a gun, and told her to take it out to the truck. Bowers went back to the truck, tossed the gun to Levy, and asked him to come with her inside the apartment. White allowed Bowers back in, but tried to keep Levy out.

Levy forced his way into the apartment. According to White and Mitchell, Levy had a gun in his hand at this time and according to Mitchell, the gun was cocked. Levy brought White, Mitchell, and Thorne into the bedroom, which was occupied by Montemayor.[1] Levy asked them to give him their money, drugs, and jewelry. When Thorne refused to give up her jewelry, Levy struck her in the face. Thorne then gave up her jewelry, cash, and cell phone. According to Montemayor, Levy picked up a crowbar and threatened him with it, still holding the gun in his other hand. Montemayor lifted up the mattress to protect himself, revealing $650 hidden underneath.[2] Levy took the money, along with other cash, jewelry, and cell phones. Monetemayor saw Levy, Bowers, and Martin drive away in the Suburban.

At some point, White called 911. Later that morning, Levy was arrested near a Suburban matching the description provided by Montemayor. Officers found a loaded .38 handgun and a tire iron inside the Suburban. They found cash and jewelry on Levy. The State charged Percy Levy with unlawful possession of a firearm in the second degree, first degree burglary with a deadly weapon allegation, and three counts of first degree robbery with deadly weapon allegations.

---

[1] This Court's reading of the transcript indicates that White was not, in fact, brought into the bedroom, but that she instead remained in the living room with Bowers.

[2] The testimony at trial was that there was $560 hidden under the mattress, not $650. (*See* Dkt. No. 18, Ex. 37, Vol. 2 at 113.)

Bowers testified against Levy at trial in exchange for her charges being reduced to a misdemeanor.  White, Montemayor, Thorne, and Mitchell also testified for the State.  The defense had wanted to call Martin as a witness, but her attorney represented to the court that she would assert her Fifth Amendment right not to testify.  Cox, the driver of the Suburban, did not testify, nor did Levy testify on his own behalf.  The defense argued that the State's witnesses were all drug addicts who could not be believed, and pointed to various inconsistencies in the witnesses' testimony.

Neither party took exception to any of the court's instructions to the jury. Instruction number 10 provided:

> To convict the defendant of the crime of burglary in the first degree, as charged in Count I, each of the following elements of the crime must be proved beyond a reasonable doubt:

> (1)     That on or about the 24th day of October, 2002, the defendant, or an accomplice, entered or remained unlawfully in  a building: to-wit: the building of Kenya White, located at 711 W. Casino Rd., Everett, WA;

> (2)     That the entering or remaining was with intent to commit a crime against a person or property therein;

> (3)     That in so entering or while in the dwelling or in immediate flight from the dwelling the defendant or an accomplice in the crime charged was armed with a deadly weapon, to-wit: a .38 revolver or a crowbar; and

> (4)     That the act occurred in the State of Washington.

> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

> On the other hand, if, after weighing all of the evidence you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

(Emphasis added).  Instruction 15 provided:

> To convict the defendant of the crime of robbery in the first degree, as charged in Count II, each of the following elements of the crime must be proved beyond a reasonable doubt:

REPORT AND RECOMMENDATION
PAGE -3

(1)     That on or about the 24th day of October, 2002, the defendant, or an accomplice, unlawfully took <u>personal property to wit:  jewelry, from the person or in the presence of another, to-wit: Michael Montemayor;</u>

(2)     That the defendant intended to commit theft of the property;

(3)     That the taking was against Michael Montemayor's will by the defendant's, or an accomplice's, use or threatened use of immediate force, violence or fear of injury to Michael Montemayor;

(4)     That the force or fear was used by the defendant, or an accomplice, to obtain or retain possession of the property;

(5)     That in the commission of these acts the defendant or an accomplice was armed with a <u>deadly weapon, to wit: a .38 revolver or a crowbar</u>; and

(6)     That the acts occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

(Emphasis added).  Instructions 16 and 17 were identical to Instruction 15, except they referred to Counts III and IV, and instead of "Michael Montemayor," they named as alleged victims "Brianna Thorne aka April Ames" and "Kenya White" respectively.  Instruction 20 provided:

In regard to Counts I, II, III, and IV, it is alleged that the defendant, or an accomplice, possessed one or more deadly weapons, to wit: a .38 revolver or a crowbar.  To convict the defendant in Counts I, II, III, and IV, the State must prove beyond a reasonable doubt that the defendant possessed one or more deadly weapons.  Further, you must unanimously agree as to which deadly weapon or deadly weapons, (a .38 revolver or a crowbar), he possessed.

The jury was separately, properly instructed on the definitions of building, deadly weapon, and firearm.

REPORT AND RECOMMENDATION
PAGE -4

The jury found Levy not guilty on Count IV, relating to the alleged robbery of Kenya White, but guilty on the remaining counts.  By way of special verdict forms on the robberies and the burglary, the jury found that Levy was armed with a deadly weapon at the time of the offenses.  On each count in question, the jury found that Levy was not armed with a crowbar, but was armed with a firearm.

(Dkt. No. 18, Ex. 6 at 2-5.)

On February 26, 2003, petitioner was sentenced to a total term of confinement of 231 months.  (*Id.*, Ex. 1 at 6.)  On March 3, 2003, petitioner's judgment and sentence was amended.  (*See id.*, Ex. 31 at Ex. 3.)  This amendment appears to have resulted in an increase in petitioner's total term of confinement to 330 months.  (*Id.*)

On March 22, 2003, petitioner's counsel filed a timely notice of appeal of the judgment and sentence entered by the Snohomish County Superior Court.  (*Id.*, Ex. 2.)  On October 31, 2003, petitioner's appellate counsel filed a brief of appellant in the Washington Court of Appeals which presented the following issue for review:

The Washington Constitution forbids judicial comments on the evidence.  A trial judge violated this prohibition when he or she instructs the jury that matters of fact have been established as a matter of law.  In appellant's case, the trial court instructed the jury that a number of facts critical to the State's proof had been established as a matter of law.  In effect, the court directed the jury to find essential elements of the offenses.  Is appellant entitled to a new trial on these charges?

(*Id.*, Ex. 3 at 1.)

On December 31, 2003, petitioner filed a *pro se* brief of appellant in which he identified the following additional assignments of error:

A.    Levy's right to confrontation was violated and gun was wrongly admitted at the suppression hearing.

B.    Attorney was ineffective at suppression hearing.

REPORT AND RECOMMENDATION
PAGE -5

C.    Levy's right to confrontation was violated by witness Martin not taking the stand.

D.    Levy's lawyer was ineffective concerning the calling of witness Martin.

E.    Levy's lawyer was ineffective for not admitting exculpatory evidence.

F.    Sequestration order was violated by witnesses and no inquiry held.

G.    Opinion evidence was admitted by testifying officer in the form of expert testimony by a lay witness.

H.    Levy was denied a fair trial by the fact he wore jail I.D in the presence of the jury.

I.    No hearing or inquiry was held to levy's challenge on the record that his speedy trial right was violated.

J.    Lawyer was not allowed to withdraw.

K.    Lawyer was ineffective at arguing Levy's offender score.

L.    Insufficient evidence to convict.

M.    Failure to inquire into conflict of intrest (sic) about attorney.

N.    Trial council (sic) was ineffective in his examination of witnesses.

(Dkt. No. 18, Ex. 4 at 1-2.)

On June 14, 2004, the Court of Appeals issued an opinion in which it affirmed petitioner's convictions. (*Id.*, Ex. 6.)  On June 24, 2004, petitioner filed a *pro se* motion for reconsideration. (*Id.*, Ex. 7.)  Petitioner's motion was denied on July 19, 2004.  (*Id.*, Ex. 8.)

On August 15, 2004, petitioner filed a document, *pro se*, in which he sought review of the Court of Appeals' decision affirming his convictions.  (*Id.*, Ex. 9.)  It appears that this document was construed as a petition for review.  Petitioner presented the following issues to the Washington Supreme Court for review in his August 15, 2004, document:

REPORT AND RECOMMENDATION
PAGE -6

01  A.   Did Court of appeals error in reviewing Levy's case without sufficient trascripts (sic).

02
03  B.   Can A comment on the evidence by the court that releives (sic) the jury of it's duty be considered harmless error?  Is the error harmless?

04  C.   Did Levy's right to compel witnesses get violated by the witnesses (sic) attorney blanketly (sic) asserting the priveledge (sic)?

05
06  D.   Was hearsay evidence of a consent to search enough to admit a weapon without the consent sighner (sic) being present?

07  (Dkt. No. 18, Ex. 9 at 1.)

08      The Supreme Court granted review on all four issues (*see id*., Ex. 12 at 6) and counsel was

09  apparently appointed to represent petitioner (*see id*., Ex. 11).  On April 13, 2006, the Washington

10  Supreme Court issued an en banc decision in which it affirmed the Washington Court of Appeals'

11  decision with respect to the judicial comment issue (Issue B) and with respect to petitioner's Sixth

12  Amendment claim (Issue C).  (*Id*., Ex. 12 at 29.)  In addition, the Supreme Court found each of

13  petitioner's specific *pro se* claims to be without merit (Issue A), and concluded that petitioner's

14  claim pertaining to the admission of evidence at the suppression hearing was not challengeable on

15  appeal (Issue D).  On July 7, 2006, the Supreme Court issued its mandate terminating direct

16  review.  (*Id*., Ex. 13.)

17      While petitioner's direct appeal was pending, petitioner filed three separate personal

18  restraint petitions in the state courts.  (*See id*., Exs. 14, 24, and 30.)  Each of those petitions was

19  stayed pending resolution of petitioner's direct appeal, and each was ultimately dismissed.  (*See

20  id*., Exs. 18, 19, 21, 27, 28, 32, and 34.)  Petitioner now seeks federal habeas review of his

21  convictions.

22  */ / /*

REPORT AND RECOMMENDATION
PAGE -7

01                    GROUNDS FOR RELIEF

02        Petitioner identifies seven grounds for relief in his federal habeas petition:

03        GROUND ONE:        Washington Supreme Court erred in analyzing a structural
          error for harmlessness.

04

05        GROUND TWO:        Levy's constitutional right to a jury trial and due process was
          violated by instructions at trial.

06        GROUND THREE:   Levy was denied his constitutional right to present a defense
          (by way of State's misconduct).

07

08        GROUND FOUR:       It was a violation of Levy's constitutional right to effective
          counsel for attorney to not know applicable law.

09        GROUND FIVE:       It was a violation of constitutional right to effective counsel for
          attorney to terminate a reasonable defensive strategy.

10

11        GROUND SIX:        Levy's constitutional right to confrontation was violated by not
          being able to confront witness.

12        GROUND SEVEN:   Constitutional violation to deny Levy's right to appeal (due
          process) (equal protection).

13

14   (*See* Dkt. No. 6 at 5, 6, 8, 9, 11a, 11c, and 11e.)

15                        DISCUSSION

16        Respondent concedes in his answer to petitioner's federal habeas petition that petitioner

17   has properly exhausted his first, second, third, and seventh grounds for relief.  Respondent argues,

18   however, that the decisions by the Washington State Courts with respect to those claims were not

19   contrary to or an unreasonable application of clearly established federal law and that petitioner is

20   therefore not entitled to relief with respect to those claims.  As to petitioner's remaining claims,

21   respondent asserts that petitioner has not exhausted his fourth, fifth, and sixth grounds for relief

22   and argues that he would now be barred from returning to the state courts to properly exhaust

REPORT AND RECOMMENDATION
PAGE -8

01 those claims.

02 <u>Exhaustion</u>

03      A state prisoner is required to exhaust all available state court remedies before seeking a

04 federal writ of habeas corpus.  28 U.S.C. § 2254(b)(1).  The exhaustion requirement is a matter

05 of comity, intended to afford the state courts "an initial opportunity to pass upon and correct

06 alleged violations of its prisoners' federal rights."   *Picard v. Connor*, 404 U.S. 270, 275

07 (1971)(internal quotation marks and citations omitted).  In order to provide the state courts with

08 the requisite "opportunity" to consider his federal claims, a prisoner must "fairly present" his

09 claims to each appropriate state court for review, including a state supreme court with powers of

10 discretionary review.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing, *Duncan v. Henry*, 513

11 U.S. 364, 365 (1995), and *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

12      It is not enough that all the facts necessary to support a prisoner's federal claim were

13 before the state courts or that a somewhat similar state law claim was made.   *Anderson v.*

14 *Harless*, 459 U.S. 4, 6 (1982).  "If a petitioner fails to alert the state court to the fact that he is

15 raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity

16 to the issues raised in state court."   *Johnson v. Zenon*, 88 F.3d at 830.  In addition, "[i]t is not

17 enough to make a general appeal to a constitutional guarantee as broad as due process to present

18 the substance of such a claim to a state court."  *Gray v. Netherland*, 518 U.S. 152, 163 (1996).

19      1.   <u>Grounds Four and Five</u>

20      Petitioner asserts in his fourth ground for federal habeas relief that he was denied his right

21 to effective assistance of counsel when his trial counsel failed to secure the physical presence of

22 Breena Martin at trial.  Martin was a co-defendant of petitioner's, who was to be tried separately,

REPORT AND RECOMMENDATION
PAGE -9

01 and who asserted her Fifth Amendment right at petitioner's trial through her attorney.  Petitioner

02 indicates that his attorney originally sought to have Martin take the stand so that the defense could

03 investigate whether Martin had been threatened into not testifying.  He asserts, however, that his

04 attorney gave up on his efforts to have Martin take the stand because he failed to research the

05 applicable law.

06       Petitioner asserts in his fifth ground for federal habeas relief that his attorney failed to

07 pursue a reasonable defense strategy involving ownership of jewelry taken during the robbery.

08 Petitioner faults counsel for failing to call a booking officer who booked petitioner into the

09 Snohomish County Jail a few days prior to the date of the instant offense who could have testified

10 about jewelry which was in petitioner's possession at the time of that booking.  Petitioner also

11 faults counsel for failing to try to admit the booking receipt from that prior booking which reflects

12 that petitioner had jewelry in his possession at that time.

13       Respondent asserts that petitioner failed to present his fourth and fifth habeas claims to the

14 Washington Supreme Court for review.  The record supports this assertion.  In his *pro se* brief of

15 appellant, which was presented to the Court of Appeals on direct appeal, petitioner argued that

16 his trial counsel was ineffective in a number of different respects.  Two of the ineffective assistance

17 of counsel claims presented to the Court of Appeals were similar in nature to the ones presented

18 in petitioner's fourth and fifth grounds for federal habeas relief.  However, petitioner presented

19 no such claims in his petition for review to the Washington Supreme Court.

20       In his petition for review, petitioner referenced two ineffective assistance of counsel claims

21 which he had presented to the Washington Court of Appeals in his *pro se* brief, and which he

22 claimed the Court of Appeals had not adequately analyzed because of an incomplete record.  (*See*

REPORT AND RECOMMENDATION
PAGE -10

01 | Dkt. No. 18, Ex. 9 at 4.)  However, neither of those ineffective assistance of counsel claims was

02 | based on the same facts as those which serve as the basis for petitioner's fourth and fifth grounds

03 | for federal habeas relief.

04 |       Petitioner also appeared to indicate in his petition for review that he was dissatisfied with

05 | his appellate counsel because counsel failed to ensure that the Court of Appeals had a complete

06 | record on which to base its decision.  (*Id.*, Ex. 9 at 17.)  However, petitioner's fourth and fifth

07 | grounds for relief clearly implicate the effectiveness of trial counsel, not appellate counsel.  As

08 | nothing in the record before this Court reflects that petitioner ever presented either his fourth or

09 | fifth ground for federal habeas relief to the Washington Supreme Court for review, this Court must

10 | conclude that neither of those claims has been properly exhausted.  *See O'Sullivan v. Boerckel*,

11 | 526 U.S. 838 (1999).

12 |       2.    <u>Ground 6</u>

13 |       Petitioner asserts in his sixth ground for federal habeas relief that he was denied his

14 | constitutional right to confront witnesses when a consent to search form was admitted at a pre-

15 | trial suppression hearing despite a challenge to the identity of the individual who signed the

16 | consent form. Petitioner argues that this constituted a violation of the rule announced in *Crawford*

17 | *v. Washington*, 541 U.S. 36 (2004).  Respondent asserts that this claim has not been properly

18 | exhausted because petitioner, in his petition for review on direct appeal, argued to the Washington

19 | Supreme Court only that his due process rights were violated when the trial court allowed into

20 | evidence a weapon which was found in the vehicle of a non-testifying witness.  Respondent notes

21 | that petitioner never specifically asserted a federal constitutional violation when he presented this

22 | claim to the Washington Supreme Court nor did he cite to any federal case law in support of his

01 claim.

02       While respondent is correct that petitioner did not present his sixth claim for relief to the

03 Washington Supreme Court on direct appeal, it appears that petitioner did present a similar claim

04 to the Washington Supreme Court during proceedings related to his third personal restraint

05 petition.  While petitioner did not specifically assert a Confrontation Clause claim in his third

06 personal restraint petition, it appears that he did present such a claim to the court at some point

07 because the state specifically addressed petitioner's *Crawford* claim in its response to petitioner's

08 third personal restraint petition (*see* Dkt. No. 18, Ex. 31 at 17-19), and the Supreme Court

09 Commissioner referenced and rejected petitioner's *Crawford* argument in his ruling dismissing

10 petitioner's third personal restraint petition (*see id.*, Ex. 34 at 2.)

11       Because it appears that petitioner did, in fact, present to the Washington Supreme Court

12 for review a Confrontation Clause issue similar to the one presented in his sixth ground for federal

13 habeas relief, this Court must conclude that the claim has been exhausted.  This Court will

14 therefore consider the merits of petitioner's sixth ground for relief below.

15 Procedural Default

16       When a petitioner fails to exhaust his state court remedies and the court to which petitioner

17 would be required to present his claims in order to satisfy the exhaustion requirement would now

18 find the claims to be procedurally barred, there is a procedural default for purposes of federal

19 habeas review.  *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

20       Respondent argues that petitioner would now be procedurally barred under Washington

21 law from presenting his unexhausted claims to the state courts by operation of RCW 10.73.140

22 which bars the filing of successive personal restraint petitions.  Petitioner appears to suggest in his

REPORT AND RECOMMENDATION
PAGE -12

01    traverse to respondent's answer that he would not necessarily be procedurally barred from

02    returning to the state courts because the language of RCW 10.73.140 is not mandatory.

03          RCW 10.73.140 provides in relevant part as follows:

04          Upon receipt of a personal restraint petition, the court of appeals shall review the
              petition and determine whether the person has previously filed a petition or petitions
05          and if so, compare them.  If upon review, the court of appeals finds that the petition
              has previously raised the same grounds for review, or that the petitioner has failed to
06          show good cause why the ground was not raised earlier, the court of appeals shall
              dismiss the petition on its own motion without requiring the state to respond to the
07          petition.

08          The two grounds which this Court concludes have not been properly exhausted were

09    presented to the Court of Appeals in petitioner's *pro se* brief on appeal and those claims were

10    rejected.  Petitioner simply failed to pursue these claims at the next level of review.  Were

11    petitioner to return to state courts to attempt to exhaust these claims, he would have to establish

12    good cause for his failure to raise the claims in one of his *three* prior personal restraint petitions.

13    As petitioner's unexhausted claims were clearly available to him at the time his previous personal

14    restraint petitions were filed, it seems highly unlikely that he would be able to make the showing

15    required by RCW 10.73.140.

16          The Court notes that there is an additional reason why petitioner would be unlikely to

17    obtain review if he were to return to the state courts in an attempt to exhaust his fourth and fifth

18    grounds for relief.  Under Washington law, "a personal restraint petitioner may not renew an issue

19    that was raised and rejected on direct appeal unless the interests of justice require relitigation of

20    that issue."  *In re Lord*, 123 Wn.2d 296, 303 (1994) (citing *In re Taylor*, 105 Wn.2d 683, 688

21    (1986)).  As petitioner's fourth and fifth grounds for relief were originally presented to the Court

22    of Appeals on direct appeal, it appears unlikely that petitioner would be permitted to litigate those

REPORT AND RECOMMENDATION
PAGE -13

01  claims a second time.

02    For the foregoing reasons, it appears likely that the state courts would find petitioner's

03  fourth and fifth grounds for federal habeas relief procedurally barred.  Accordingly, this Court

04  concludes that petitioner has procedurally defaulted on his fourth and fifth grounds for federal

05  habeas relief.

06  <u>Cause and Prejudice</u>

07    When a state prisoner defaults on his federal claims in state court, pursuant to an

08  independent and adequate state procedural rule, federal habeas review of the claims is barred

09  unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the

10  alleged violation of federal law, or demonstrate that failure to consider the claims will result in a

11  fundamental miscarriage of justice.  *Coleman v. Thompson*, 501 U.S. at 750.

12    To satisfy the "cause" prong of the cause and prejudice standard, petitioner must show that

13  some objective factor external to the defense prevented him from complying with the state's

14  procedural rule.  *Id.* at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  To show

15  "prejudice," the petitioner "must shoulder the burden of showing, not merely that the errors at his

16  trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial

17  disadvantage, infecting his entire trial with error of constitutional dimensions."  *United States v.*

18  *Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).  Only in an "extraordinary case" may the

19  habeas court grant the writ without a showing of cause or prejudice to correct a "fundamental

20  miscarriage of justice" where a constitutional violation has resulted in the conviction of a

21  defendant who is actually innocent.  *Murray v. Carrier*, 477 U.S. at 495-96.

22    Petitioner asserts in his traverse that his argument concerning missing transcripts which

REPORT AND RECOMMENDATION
PAGE -14

01    was presented to the Washington Supreme Court in his petition for review on direct appeal

02    incorporated his fourth and fifth grounds for relief.  He also asserts that the cause of his failure to

03    exhaust those claims is a result of the missing transcripts.  The record reflects that petitioner

04    argued to the Washington Supreme Court that certain claims had not been considered by the Court

05    of Appeals as a result of missing transcripts.  However, petitioner's fourth and fifth grounds for

06    relief were not among those claims.  Petitioner makes no showing that the missing transcripts were

07    the cause of his failure to exhaust his fourth and fifth grounds for relief.  Accordingly, this Court

08    concludes that petitioner has not established cause for his failure to exhaust his state court

09    remedies with respect to these two grounds for relief.

10            Because petitioner has not met his burden of demonstrating cause for his procedural

11    default, this Court need not determine whether petitioner carried his burden of showing actual

12    prejudice. *Cavanaugh v. Kincheloe*, 877 F.2d 1443, 1448 (9th Cir. 1989) (citing *Smith v. Murray*,

13    477 U.S. 527, 533 (1986)).  In addition, petitioner makes no colorable showing of actual

14    innocence.  Petitioner therefore fails to demonstrate that his fourth and fifth grounds for federal

15    habeas relief are eligible for federal habeas review.  Petitioner's federal habeas petition should

16    therefore be dismissed as to these two grounds for relief.

17                              Standard of Review for Exhausted Claims

18            Under the Anti-Terrorism and Effective Death Penalty Act, a habeas corpus petition may

19    be granted with respect to any claim adjudicated on the merits in state court only if the state

20    court's decision was *contrary to*, or involved an *unreasonable application* of, clearly established

21    federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable

22    determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d) (emphasis

REPORT AND RECOMMENDATION
PAGE -15

01    added).

02         Under the "contrary to" clause, a federal habeas court may grant the writ only if the state

03    court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law,

04    or if the state court decides a case differently than the Supreme Court has on a set of materially

05    indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362 (2000).  Under the "unreasonable

06    application" clause, a federal habeas court may grant the writ only if the state court identifies the

07    correct governing legal principle from the Supreme Court's decisions but unreasonably applies that

08    principle to the facts of the prisoner's case.  *Id*.  The Supreme Court has made clear that a state

09    court's decision may be overturned only if the application is "objectively unreasonable."  *Lockyer*

10    *v. Andrade*, 538 U.S. 63, 69 (2003).

11                           <u>Grounds One and Two:  Erroneous Jury Instructions</u>

12         Petitioner's first two grounds for relief arise out of the jury instructions given at

13    petitioner's trial.  Petitioner asserts in his first ground for relief that the Washington Supreme

14    Court erred when, after concluding that certain instructions were erroneous, it analyzed those

15    errors under the harmless error standard.  Petitioner contends that the errors were structural and

16    therefore subject to automatic reversal.  Petitioner asserts in his second ground for relief that his

17    constitutional rights to a jury trial and to due process were violated by the jury instructions which

18    the state courts concluded were not erroneous.

19         Petitioner presented a single jury instruction claim to the Washington Court of Appeals on

20    direct appeal.  That claim was that instructions 10, 15, 16 and 20 contained impermissible judicial

21    comments on the evidence in violation of article 4, § 16 of the Washington Constitution.

22    (Dkt. No. 18, Ex. 3 at 1.)  The Court of Appeals, in analyzing this claim, concluded that some of

REPORT AND RECOMMENDATION
PAGE -16

01  the challenged instructions amounted to improper comments on the evidence and others did not.

02  (*See id.*, Ex. 6 at 9-10.)   As to those instructions which the Court of Appeals concluded were

03  erroneous, the court conducted a harmless error analysis and concluded that the instructional

04  errors were harmless beyond a reasonable doubt.  (*See id.*, Ex. 6 at 10-14.)

05          In his *pro se* petition for review to the Washington Supreme Court, petitioner argued that

06  the judicial comments contained within certain of the jury instructions effectively instructed the

07  jury that elements of the charged crimes had been established as a matter of law and thereby

08  removed those elements from the jury's consideration. ( *See id.*, Ex. 9 at 5-15.)  Petitioner

09  asserted that the Supreme Court should accept review of this issue because the decision of the

10  Court of Appeals was in conflict with a decision of the Washington Supreme Court,  *State v.*

11  *Becker*, 132 Wn.2d 54 (1997), and because petitioner had presented a significant question under

12  the United States Constitution.  (Dkt. No. 18, Ex. 9 at 5.)   As to the federal constitutional

13  question presented, petitioner argued that the erroneous jury instructions violated constitutional

14  principles because they removed elements of the offenses from the jury's consideration, and that

15  such instructions required automatic reversal.  (*See id.*, Ex. 9 at 6-10.)

16          Petitioner's counsel subsequently filed a supplemental brief in which he argued that the trial

17  court's instructions to the jury were an impermissible comment on the evidence in violation of

18  Article IV, Section 16 of the Washington State Constitution.  (*See id.*, Ex. 11 at 7-17.)  Counsel

19  further argued that the instructional errors were structural and therefore, under *Neder v. United*

20  *States*, 527 U.S. 1 (1999), were not subject to harmless error analysis.  (*Id.* at 17-20.)

21          The Washington Supreme Court issued an *en banc* decision in which it considered and

22  rejected the merits of petitioner's challenge to the jury instructions.  The Court explained its

REPORT AND RECOMMENDATION
PAGE -17

01   reasoning as follows:

02         A.      Is a reference in a jury instruction to a fact that must be proved by the
                   State a judicial comment on the evidence?  If so, what is the effect?

03

04         Levy argues that five jury instructions included judicial comments on the
       evidence that removed several elements from the jury's consideration at trial and must
       be considered structural errors that are not subject to harmless error analysis.

05     Alternatively, he argues that even if the errors were not structural, and prejudicial per
       se, they cannot survive harmless error analysis.   The State makes two primary

06     arguments in response.   First, it contends that Levy has not shown that the
       instructions were manifest errors affecting a constitutional right and, because he failed

07     to object to the instructions at trial, he may not raise the issue for the first time on
       appeal.  Alternatively, the State argues that the elements at issue in the instructions

08     were not in dispute at trial, and, thus, any reference to them was harmless.

09         1.      *Has Levy established a manifest constitutional error?*

10         Levy did not assert that the error was a manifest constitutional error in his
       petition for review.   However, in his brief on the merits, he argued that this court has

11     historically accepted review of challenges to instructions on the grounds that they are
       judicial comments.   The State argues that because Levy did not object to the

12     instruction at trial, in order to establish that the error is manifest he must show that
       the error affected his rights and an error that is "purely abstract and theoretical"

13     cannot be raised for the first time on appeal.  Br. of Resp't at 10.  The State further
       argues that errors in jury instructions are only of constitutional magnitude if they are

14     misleading or fail to inform the jury of the applicable law.

15         We have long held that even if the defendant fails to object at trial, error may
       be raised on appeal if it "invades a fundamental right of the accused."  *State v. Becker*,

16     132 Wn.2d 54, 64, 935 P.2d 1321 (1997) (a reviewing court will "consider a claimed
       error in an instruction if giving such instruction invades a fundamental right of the

17     accused."); *State v. Lampshire*, 74 Wn.2d 888, 893, 447 P.2d 727 (1968) (because
       a comment on the evidence invades a constitutional provision, failure to object does

18     not foreclose raising the issue on appeal); *State v. Bogner*, 62 Wn.2d 247, 252, 382
       P.2d 254 (1963) (even if the evidence is undisputed or overwhelming, comment by

19     the judge violates a constitutional inunction).

20         The claimed error in the jury instructions here alleges judicial comment on the
       evidence, not the omission of elements.  Because judicial comments on the evidence

21     are explicitly prohibited by the Washington Constitution we conclude that Levy raises
       an issue involving a manifest constitutional error, and his claim may be heard on

22     appeal even though he did not object to the instructions at trial.

REPORT AND RECOMMENDATION
PAGE -18

01            2.       *Were the references judicial comments on the evidence?*

02         Levy argues that references to the building address, Kenya White, Michael
Montemayor, Brianna Thorne, the revolver, the crowbar, and the jewelry "instruct[ed]

03 the jury that matters have been established as a matter of law." Pet. for Review at 5.
Levy further argues that it is not necessary for the judge to expressly convey his

04 personal feelings on the evidence for the comments to constitute a violation. *Id*. He
cites to two rulings of this court as support for his claim that the "to wit" language

05 violated the prohibition on judicial comments. *Becker*, 132 Wn.2d 54, 935 P.2d 1321;
*State v. Akers*, 136 Wn.2d 641, 965 P.2d 1078 (1998). In *Becker*, we held that a

06 special verdict form asking whether defendants were within 1,000 feet of school
grounds that included the phrase "'to-wit: Youth Employment Education Program

07 [YEP] School'" impermissibly relieved the state of its burden to prove that the
program was, in fact, a school. 132 Wn.2d at 64. In *Akers*, we did not reach the

08 question of whether a special verdict form that left out the word "school" in the "to-
wit" phrase was judicial comment, but we criticized the Court of Appeals holding that

09 it was not a judicial comment based on *Becker*, 136 Wn.2d at 644.

10         The State counters that jury instructions must be read as a whole and that the
instructions in this case were clearly distinguishable from *Becker*. The State argues

11 that in *Becker* the question of whether YEP was a school was critical to the issue of
whether the defendants had committed a crime at all. 132 Wn.2d at 63. Here, the

12 State contends that because other jury instructions defined the terms "building,"
"deadly weapon," and "personal property," to interpret the "to-wit" references as a

13 directed verdict would render the other instructions meaningless. Further, the State
argues that there was never any dispute that White's apartment is a building, that .38

14 revolvers or crowbars are deadly weapons, that jewelry is personal property, or that
named victims are persons other than the defendant.

15

16         We review jury instructions de novo, within the context of the jury
instructions as a whole. *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995).

17 A judge is prohibited by article IV, section 16 from "conveying to the jury his or her
personal attitudes toward the merits of the case" or instructing a jury that "matters of

18 fact have been established as a matter of law." *Becker*, 132 Wn.2d at 64. Moreover,
the court's personal feelings on an element of the offense need not be expressly

19 conveyed to the jury; it is sufficient if they are merely implied. *State v. Jacobsen*, 78
Wn.2d 491, 495, 477 P.2d 1 (1970); *Lampshire*, 74 Wn.2d at 892. Thus, any remark

20 that has the potential effect of suggesting that the jury need not consider an element
of an offense could qualify as a judicial comment.

21         In *Becker*, the "to-wit" reference in the special verdict form expressly stated
that the youth program *was a school*, a fact that was highly contested by the parties

22 and critical to the case. 132 Wn.2d at 64. The question of whether it was a school

REPORT AND RECOMMENDATION
PAGE -19

01  was also a threshold issue that had to be established for there to be *any crime at all*. *Id*. Here, the Court of Appeals concluded that the references to White's apartment

02  as a building and to the revolver and crowbar as deadly weapons were arguably judicial comments. We agree with respect to the references to the building and

03  crowbar.

04  The only instruction here that is clearly analogous to the instruction in *Becker* is the reference to "the building of Kenya White, located at 711 W. Casino Rd.,

05  Everett, WA." CP at 59. As with the reference in *Becker*, which named YEP as a school," the instruction here expressly named White's apartment as "a building." *Id*.

06  We therefore agree with the Court of Appeals that the use of the word "building" in the instruction improperly suggested to the jury that the apartment was a building as

07  a matter of law.

08  The reference to the crowbar is also problematic. A crowbar only qualifies as a deadly weapon if it "has the capacity to inflict death and from the manner in which

09  it is used, is likely to produce or may easily and readily produce death." RCW 9.94A.602. Thus, the State must prove that the crowbar was used in a way that met

10  the criteria of a deadly weapon. We conclude that the Court of Appeals correctly found that the reference to the crowbar as a deadly weapon was likely a judicial

11  comment because the jury need not consider whether the State proved that its use caused it to be qualified as a deadly weapon.

12

13  We disagree with the Court of Appeals conclusion that the references to the revolver constituted judicial comment on the evidence. The pattern jury instructions

14  permit a court to instruct the jury that a revolver is a deadly weapon as a matter of law, and the court was well within its authority to so instruct the jury in this case. *See*

15  11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 2.06.01, at 29 (1994) (WPIC); WPIC 2.07.02, at 37.

16  We agree with the Court of Appeals conclusion that referring to jewelry as personal property and the names of the alleged victims as another do not qualify as

17  judicial comment. The pattern jury instruction for the offense of robbery expressly permit the court to instruct the jury that a particular item qualifies as property if it

18  would be appropriate within the context of the case. WPIC 2.21, at 53. Here, because there was no dispute as to whether jewelry was personal property and the

19  only question related to whether jewelry was taken from the victims, it was not inappropriate for the court to instruct the jury that jewelry is personal property.

20

21  Similarly, the victim's name is not an element of the offense of robbery. Therefore, it would not constitute a comment on the evidence for the court to name

22  the alleged victim in a jury instruction. Further, we agree with the Court of Appeals that naming the victim does not improperly suggest to the jury that it need not find

01    that the property was taken from another.

02        We hold that the "to-wit" reference to the building and the crowbar qualified
as judicial comments and the remaining references did not.

03        3.    *How should the effect of a judicial comment be analyzed?*

04        Because we have concluded that some of the references in the jury instructions
qualified as judicial comments on the evidence, we must analyze their effect.  Levy
05    argues that judicial comments are either prejudicial per se under article IV, section 16,
or structural errors subject to automatic reversal under *Neder v. United States*, 527
06    U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999).

07        Article IV, section 16 states that "[j]udges shall not charge juries with respect
08    to matters of fact, nor comment thereon, but shall declare the law."  Washington
courts apply a two-step analysis when deciding whether reversal is required as a result
09    of an impermissible judicial comment on the evidence in violation of article IV, section
16.  Judicial comments are presumed to be prejudicial, and the burden is on the State
10    to show that the defendant was not prejudiced, unless the record affirmatively shows
that no prejudice could have resulted.  *State v. Lane*, 125 Wn.2d 825, 838-39, 889
11    P.2d 929 (1995); *Lampshire*, 74 Wn.2d at 892; *State v. Stephens*, 7 Wn. App. 569,
573, 500 P.2d 1262 (1972), *aff'd in part, rev'd in part*, 83 Wn.2d 485, 519 P.2d 249
12    (1974) (the State has the burden of showing that the jury's decision was not
influenced, *even when the evidence is undisputed or overwhelming* ); *Bogner*, 62
13    Wn.2d at 251, 254 (burden is not on the defendant to show prejudice; reversible error
unless the record affirmatively shows that the defendant could not have been
14    prejudiced by the error; citing cases, including *State v. Amundsen*, 37 Wn.2d 356, 223
P.2d 1067 (1950), where the court held that the burden was on the State to show no
15    prejudice actually resulted); *In re Detention of R.W.*, 98 Wn. App. 140, 144, 988 P.2d
1034 (1999); *see State v. Manderville*, 37 Wash. 365, 371, 79 P. 977 (1905).

16        The presumption of prejudice test has consistently been applied to    *oral*
17    comments made by a judge during the course of a trial.  *See Bogner*, 62 Wn.2d at
252; *Lampshire*, 74 Wn.2d at 892.  In one recent case involving a judicial comment
18    on a specific element in a *written* jury instruction we did not explicitly apply the two-
step presumption of prejudice analysis but found the comment to be "tantamount to
19    a directed verdict."  *Becker*, 132 Wn.2d at 65.  Significantly, however, we did not
expressly reject the presumption of prejudice analysis in favor of a prejudicial per se
20    standard.[3]

21

22        [3] [Washington Supreme Court footnote 2] Washington courts have concluded that judicial
comments were harmless in at least two cases.  *State v. Lane*, 125 Wn.2d 825, 840, 889 P.2d 929

As an alternative basis for our ruling, both parties cite for different purposes to *Neder*, 527 U.S. at 8 (holding that misstatements and omissions in jury instruction are trial-type errors subject to harmless error analysis, not structural errors subject to automatic reversal that affect the entire framework within which the trial proceeds).[4] Levy argues that judicial comments on elements are distinguishable from the trial-type errors at issue in *Neder*, such as omitted and misstated elements, and more akin to structural errors that are subject to automatic reversal. The State contends that the *Neder* harmless error test, which has been expressly adopted by this court in other criminal contexts, should also be applied to judicial comments.

There are qualitative differences between structural errors, trial-type errors, and judicial comments. A structural error resists harmless error review completely because it taints the entire proceedings. A trial-type error is harmless if "it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Neder*, 527 U.S. at 15 (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)). A judicial comment is presumed prejudicial and is only not prejudicial if the record affirmatively shows no prejudice could have resulted.

With trial-type errors, the *Neder* harmless error analysis asks the court to determine whether the result could have been the same without the error, which is a different standard than the presumption of prejudice we apply in our judicial comment cases under article IV, section 16. A structural error taints the entire proceeding, whereas a judicial comment may not be prejudicial if the record affirmatively shows that no prejudice occurred. Further, judicial comments on the evidence implicate a state constitutional provision that has no parallel in the federal constitution and the

_____

(1995) (a judicial comment regarding the credibility of a witness did not prejudice one of the defendants because there was *overwhelming untainted evidence* supporting his conviction); *State v. Holt*, 56 Wn. App. 99, 106, 783 P.2d 87 (1989) (to convict instructions that specified the material alleged to be lewd were harmless *beyond a reasonable doubt* because other instructions provided a definition of "lewd").

[4] [Washington Supreme Court footnote 3] *Neder* cites a "very limited class of errors" that qualifies as "structural" error. 527 U.S. at 8. The list includes *Sullivan v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993) (defective reasonable doubt jury instruction); *Vasquez v. Hillery*, 474 U.S. 254, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986) (racial discrimination in grand jury selection); *McKaskle v. Wiggins*, 465 U.S. 168, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984) (denial of self representation); *Waller v. Georgia*, 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984) (denial of public trial); *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963) (denial of counsel); *Tumey v. Ohio*, 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927) (biased judge at trial).

01  existing state standard adequately addresses the state constitutional concerns.

02  We hold that the *Neder* harmless error analysis does not apply to judicial comment claims, although it is properly applied in other criminal contexts. *See e.g.,*
03  *State v. Brown*, 147 Wn.2d 330, 340-41, 58 P.3d 889 (2002). We also conclude that judicial comments are not structural errors or prejudicial per se; that is, prejudicial
04  without further analysis. We hold that a judicial comment in a jury instruction is presumed to be prejudicial, and the burden is on the State to show that the defendant
05  was not prejudiced, unless the record affirmatively shows that no prejudice could have resulted.

06
     4.    *Did prejudice result in this case?*
07
     Levy argues that the errors were prejudicial because absent a finding that the
08  apartment was a building and the crowbar was a deadly weapon, the jury did not decide that all the elements of the offenses were proved.[5] The State argues that the
09  errors were harmless because Levy did not dispute any of those facts. The State also argues that the facts were not critical to Levy's convictions. The critical issues were
10  whether Levy *possessed* a crowbar and whether he *entered* the building.

11  Any similarity we have noted between the instructions here and those in *Becker* ends when we consider the relative significance of the specific comments in
12  the two cases. The question of whether White's apartment was a building was never challenged in any way by the defendant at trial; whereas in      *Becker*, the issue of
13  whether YEP was a school was highly contested and provided the basis for the entire case. We believe the proper conclusion in this case regarding the reference to the
14  apartment as a building is that the jury could not conclude White's apartment was anything *other than* a building. With respect to the crowbar, although it is possible
15  that the jury in this case might have erroneously concluded that it was deadly weapon, it found that Levy *did not possess* the crowbar. As a result, he could not have been
16  prejudiced by the comment even if the jury improperly concluded that the crowbar was a deadly weapon.

17  The fundamental question underlying our analysis of judicial comments is
18  whether the mere mention of a fact in an instruction conveys the idea that the fact has been accepted by the court as true. The instructions here named the type of personal
19  property allegedly stolen, the specific address where the offense allegedly occurred, the specific victims involved, and the two weapons allegedly used. Even if we

20

21  [5] [Washington Supreme Court footnote 4] Although Levy's argument also referred to the
     revolver, the jewelry and the named victims we do not include them in our analysis here because
22  we have concluded that those references were not judicial comment.

01    assumed that all of those facts were judicial comments, we do not believe that
02    prejudice resulted.  No one could realistically conclude that a revolver is *not* a deadly
      weapon, an apartment is *not* a building, a specifically named person is *not* someone
03    other than the defendant, and jewelry is *not* personal property.

04            The Court of Appeals in *Akers* reached a similar conclusion.  *State v. Akers*,
      88 Wn. App. 891, 898, 946 P.2d 1222 (1997), *aff'd*, 136 Wn.2d 641, 965 P.2d 1078
05    (1998).  It reasoned that a "to-wit" reference to a knife in a deadly weapon instruction
      did not instruct the jury that a knife *is a deadly weapon*  where the jury is properly
06    instructed on the definition of a deadly weapon.  *Id*.  Here as well, the Court of
      Appeals correctly held that no rational juror would have concluded that jewelry was
07    not property, the named victims were not someone other than *Levy*, a revolver was
      not a deadly weapon, or an apartment located at a specific address was not a building.
08    Although we criticized the Court of Appeals reasoning in *Akers*, we did not conduct
      a detailed analysis because we affirmed on other grounds.  Based on the analysis set
09    out above, we conclude that the jury in this case was not relieved of its duty to
      determine that all the elements of the offenses had been proved by the State.

10            Thus, we agree with the Court of Appeals that while some of the references
11    included in the jury instructions were judicial comments on the evidence, the errors
      were not prejudicial.  We therefore affirm the Court of Appeals.

12    (Dkt. No. 18, Ex. 12 at 7-20.)

13            Petitioner asserts in his petition that the Washington Supreme Court erred when it analyzed

14    a structural error; *i.e.*, the erroneous jury instructions, for harmlessness.  This assertion is simply

15    incorrect.   While the Washington Court of Appeals analyzed the allegedly erroneous jury

16    instructions for harmlessness, the Washington Supreme Court clearly did not.  The Supreme Court

17    discussed at length how the effect of a judicial comment should be analyzed.  In the course of that

18    discussion, the court drew a clear distinction between structural error, trial-type errors, and

19    judicial comments.  (Dkt. No. 18, Ex. 12 at 16-17.)  The court concluded that harmless error

20    analysis did not apply to judicial comment claims and that judicial comments are not structural

21    errors.  In fact, the Washington Supreme Court expressly stated that "[j]udicial comments on the

22    evidence implicate a state constitutional provision that has no parallel in the federal constitution

REPORT AND RECOMMENDATION
PAGE -24

01  and the existing state standard adequately addresses the state constitutional concerns." (*Id.*, Ex.

02  12 at 17.)

03       This statement of the Supreme Court raises an issue not touched on by the parties; *i.e.*,

04  whether petitioner's jury instruction claims are even cognizable in these federal habeas

05  proceedings? It is well established that federal habeas relief does not lie for errors of state law.

06  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)(citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)).  And,

07  it is not the province of federal habeas courts to re-examine state court conclusions regarding

08  matters of state law.  *Estelle v. McGuire*, 502 U.S. 62 (1991); *Jeffries v. Blodgett*, 5 F.3d 1180,

09  1192 (9th Cir. 1993), *cert. denied*, 510 U.S. 1191 (1994).

10       Petitioner originally presented his jury instruction claim to the state courts as one

11  implicating only state constitutional concerns.  The Washington Supreme Court, in a detailed and

12  well-reasoned opinion, made clear that petitioner's jury instruction claim implicated state and not

13  federal constitutional concerns.  Petitioner's argument to the Supreme Court that the judicial

14  comments in the jury instructions constituted structural errors under United States Supreme Court

15  case law, did not convert the state law claim presented to it for review into a federal constitutional

16  claim.  As petitioner's jury instruction claims involved state law issues which were resolved by the

17  Washington Supreme Court on state law grounds, this Court concludes that petitioner's first and

18  second grounds for relief are not cognizable in this federal habeas proceeding.  Accordingly,

19  petitioner's federal habeas petition should be dismissed with respect to petitioner's first two

20  grounds for relief.

21                    Ground Three:  Right to Present a Defense

22       Petitioner asserts in his third ground for federal habeas relief that he was denied his right

01   to present a defense by way of the state's misconduct.  This claim arises out of the decision of

02   petitioner's co-defendant, Breena Martin, to assert her Fifth Amendment privilege and the fact that

03   the privilege was asserted by Martin's attorney rather than by Martin herself.

04          Respondent, in his answer to the petition, acknowledges that petitioner presented to the

05   Washington Supreme Court a claim that his constitutional rights were violated when Martin's

06   attorney asserted his client's Fifth Amendment right not to testify.  Respondent contends,

07   however, that petitioner did not present to the Washington Supreme Court the precise claim

08   presented here; *i.e.*, that the state's misconduct caused Martin not to testify.

09          A review of petitioner's petition for review to the Washington Supreme Court (Dkt. No.

10   18, Ex. 9) fails to reveal any claim that Martin's refusal to testify was attributable to some form

11   of state misconduct.  The only claim presented to the Supreme Court regarding Martin's assertion

12   of her Fifth Amendment privilege was the claim that petitioner's Sixth Amendment right to compel

13   witnesses was violated when Martin's attorney was permitted to assert the privilege.  This claim

14   implicated the actions of the trial court and not the conduct of the prosecutor.  Thus, to the extent

15   petitioner asserts that some form of prosecutorial misconduct caused Martin not to testify, thereby

16   violating petitioner's constitutional rights, petitioner's claim must be deemed unexhausted and, for

17   the reasons identified above, procedurally barred.  The Court therefore will not consider the merits

18   of that claim.  The Court will, however, consider the merits of the Sixth Amendment claim which

19   petitioner did present to the Supreme Court for review.

20          The Washington Court of Appeals, on direct appeal, rejected petitioner's claim that it was

21   improper for Breena Martin's attorney to assert his client's Fifth Amendment rights on her behalf.

22   (Dkt. No. 18, Ex. 6 at 15-16.)  The Court noted that Martin was Levy's co-defendant and

REPORT AND RECOMMENDATION
PAGE -26

01 therefore was clearly entitled to claim the privilege.  (*Id.*, Ex. 6 at 15.)  The Court further noted

02 that the primary case relied upon by petitioner to support his claim, *United States v. Goodwin*, 625

03 F.2d 693 (1980), "[did] not hold that the defendant must personally be brought before the court

04 to raise the claim of privilege, or that an attorney may not raise the claim on behalf of his or her

05 client in the absence of an objection."  (*Id.*, Ex. 6 at 16.)

06         The Washington Supreme Court, in contrast, concluded that the trial court erred in not

07 requiring Martin to assert her Fifth Amendment privilege.  (*Id.*, Ex. 12 at 27.)  The Supreme Court

08 also concluded, however, that any error was harmless "because there was such clear evidence

09 presented as to Levy's participation in the crime."  (*Id.*)

10         Much of petitioner's argument in these proceedings appears to focus on whether he should

11 have been allowed to question Martin about any threats or promises made to her which affected

12 her decision to assert her Fifth Amendment rights.  However, the Washington Supreme Court

13 essentially resolved that issue in petitioner's favor when it concluded that the trial court erred in

14 not requiring Martin to assert her Fifth Amendment privilege.  The question, then, is whether the

15 Supreme Court reasonably concluded that the error was harmless.

16         Petitioner submitted to this Court, in conjunction with his traverse, letters which were

17 apparently written by petitioner's co-defendants to petitioner while all were in jail.  Petitioner

18 suggests that these letters, together with a statement made by Martin to the police, which

19 petitioner has been unable to obtain, demonstrate that Martin was threatened into not testifying

20 at trial.  Petitioner further suggests that if he could make that showing, he could establish

21 prosecutorial misconduct so serious that he would be entitled to automatic reversal.  However,

22 as noted above, the issue of prosecutorial misconduct is not before the Court in these proceedings

01 and, thus, discovery or further fact finding related to any such claim is unnecessary.  Nothing in

02 the materials presented by petitioner establishes that he suffered any harm as a result of the trial

03 court's failure to require Martin to assert her Fifth Amendment privilege.   Accordingly,

04 petitioner's federal habeas petition should be denied with respect to his third ground for relief.

Ground Six:  Confrontation Clause

06       Petitioner asserts in his sixth ground for federal habeas relief that his constitutional right

07 to confront witnesses was violated when a consent to search form was offered into evidence at a

08 pretrial suppression hearing, despite a challenge to the identity of the individual who signed the

09 consent to search form.  Petitioner argues that the circumstances presented here violate the rule

10 announced in *Crawford v. Washington*, 541 U.S. 36 (2004).

11       At issue is a consent to search form which was signed by John Cox, the owner of a vehicle

12 in which petitioner was known to have been riding and in which a gun was found by police during

13 their search of the vehicle.  Petitioner moved to suppress the gun evidence prior to trial.  At the

14 suppression hearing, the only testimony offered was that of Everett Police Officer Jeanne Innes

15 who obtained the consent to search from Cox. (Dkt. No. 18, Ex. 37, Vol. 2 at 29-36.)  The state

16 also offered into evidence the written consent to search form.  (*Id*. at 33.)  Petitioner's counsel

17 argued that the gun found during the search of the vehicle should be excluded because the state

18 had not met its burden of establishing that there was consent to search the vehicle.  (*Id*. at 37-38.)

19 Counsel argued that something more than just the officer's testimony was required to establish that

20 it was, in fact, John Cox who gave consent to search the vehicle and that no corroborating

21 evidence had been offered.  (*Id*. at 37-38.)  The trial court rejected these arguments and found the

22 search was consensual. ( *Id*. at 40.)  Petitioner now appears to argue that the trial court's

REPORT AND RECOMMENDATION
PAGE -28

01  admission of the consent form, or acceptance of the consent form as evidence that John Cox had,

02  in fact, consented to the search, violated his rights under the Confrontation Clause and, more

03  specifically, *Crawford*.

04       The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal

05  prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against

06  him." U.S. Const. Amend. VI.. In *Crawford*, *supra*, the Supreme Court held that out-of-court

07  statements by witnesses that are testimonial in nature are barred under the Confrontation Clause

08  unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the

09  declarant. *Crawford*, 541 U.S. at 68-69.

10       The Washington Supreme Court briefly addressed petitioner's *Crawford* claim in its ruling

11  dismissing petitioner's third personal restraint petition:

12       Mr. Levy argues that the State failed to adequately prove consent to the
     search of a vehicle in which a gun was found because it did not produce the vehicle's
13   owner at the suppression hearing (the State presented a consent form signed by the
     owner and the testimony of the police officer who obtained the consent).  But this
14   court rejected a similar argument on direct appeal. *Levy*, 156 Wn.2d at 728, 733.  To
     justify raising this issue again, Mr. Levy cites as a "significant change in the law" the
15   Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354,
     158 L. Ed. 2d 177 (2004), concerning the right of confrontation.  But Mr. Levy cites
16   no authority suggesting that the right of confrontation applies to suppression hearings.
     Nor does he show he was prejudiced by any potential denial of his right of
17   confrontation. *State v. Davis*, 154 Wn.2d 291, 304, 111 P.3d 844 (2005) (violation
     of right of confrontation subject to harmless error analysis).

18

19  (Dkt. No. 18, Ex. 34 at 1-2.)

20       Petitioner makes no showing that this decision of the Washington Supreme Court was

21  contrary to, or constituted an unreasonable application of, federal law as determined by the United

22  States Supreme Court.  Petitioner cites to no authority in either his petition or his traverse which

REPORT AND RECOMMENDATION
PAGE -29

01  suggests that the right of confrontation applies at suppression hearings.  And, in fact, the United

02  States Supreme Court has indicated otherwise.  In *United States v. Matlock*, 415 U.S. 164 (1974),

03  the Supreme Court, in considering a question regarding the admissibility of hearsay evidence at

04  a suppression hearing, noted that "the rules of evidence normally applicable in criminal trials do

05  not operate with full force at hearings before the judge to determine the admissibility of evidence."

06  The Court went on to conclude that there should be no automatic rule against the reception of

07  hearsay evidence in pretrial suppression hearings.  *Id*. at 175.  In reaching this conclusion, the

08  Court noted that "there is . . . much to be said for the proposition that in proceedings where the

09  judge himself is considering the admissibility of evidence, the exclusionary rules, aside from rules

10  of privilege, should not be applicable; and the judge should receive the evidence and give it such

11  weight as his judgment and experience counsel." *Id*.

12      Petitioner fails to establish that he suffered any violation of the rule announced in

13  *Crawford*.  Accordingly, petitioner's sixth ground for federal habeas relief should be denied.

### Ground Seven: Denial of Right to Appeal

15      Petitioner asserts in his seventh ground for federal habeas relief that he was denied his right

16  to appeal.  Specifically, petitioner contends that certain transcripts were missing from the record

17  before the Court of Appeals and, as a result, the Court of Appeals did not consider several of

18  petitioner's *pro se* claims. Petitioner further contends that after providing the Supreme Court with

19  copies of the missing transcripts, the Supreme Court essentially denied him the opportunity to have

20  those previously unconsidered claims reviewed.

21      This claim is utterly without merit.  In his petition for review to the Washington Supreme

22  Court, petitioner asserted that the Court of Appeals was not provided with a record of sufficient

01  completeness and therefore was unable to analyze several of petitioner's *pro se* claims.  (*See* Dkt.

02  No. 18, Ex. 9 at 3-4.)  Petitioner identified five claims which he believed had not been considered

03  as a result of a court reporter's failure to supply the Court of Appeals with the entire transcript.

04  (*Id.*) Petitioner requested that his case be remanded to the Court of Appeals to allow it to address

05  petitioner's *pro se* claims in light of the full record.  (*Id.*)  Petitioner requested in the alternative

06  that the Supreme Court address the claims after providing petitioner an opportunity to brief the

07  claims.  (*Id.*)

08          While petitioner apparently did not have an opportunity to submit further briefing on his

09  *pro se* claims to the Supreme Court, the record suggests that this was a decision attributable to

10  petitioner's counsel and not to the court itself.  More significantly, the Supreme Court did, in fact,

11  address each of the claims petitioner identified in his petition for review as not having been

12  analyzed by the Court of Appeals.  Petitioner suggests that the Supreme Court's review of those

13  claims was somehow inadequate because petitioner did not have an opportunity to more fully brief

14  the claims.  However, it appears that the Supreme Court conducted a thorough and thoughtful

15  review of the claims.  Petitioner offers nothing in these proceedings to suggest that additional

16  briefing would have altered the conclusion of the Supreme Court.  Accordingly, petitioner's

17  federal habeas petition should be denied with respect to petitioner's seventh ground for relief.

18                                          CONCLUSION

19          For the reasons set forth above, this Court recommends that petitioner's federal habeas

20  petition be denied and that the petition and this action be dismissed with prejudice.  A proposed

21  / / /

22  / / /

REPORT AND RECOMMENDATION
PAGE -31

order accompanies this Report and Recommendation.

DATED this <u>12th</u> day of July, 2007.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -32